UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 10-9689 PA (JCx) | Date | December 13, 2011 |
| Title | Nexon America, Inc. v. S.H., et al. | | |

| | |
|---|---|
| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE |

| | | |
|---|---|---|
| Paul Songco | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |

**Proceedings:** IN CHAMBERS–COURT ORDER

Before the Court is a Motion for Partial Summary Judgement filed by plaintiff Nexon America, Inc. ("Plaintiff"), against defendant Sithu Hein ("Defendant"). Defendant untimely filed an Opposition. Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for November 28, 2011 is vacated, and the matter taken off calendar.

I. Factual & Procedural Background

The following facts are uncontroverted.[1/] Plaintiff is a computer game publisher that owns the United States copyright in the computer game titled "MapleStory." MapleStory is a "free-to-play" online computer game in which players create a character and travel throughout the "Maple World," interacting with others, defeating foes, completing quests, solving puzzles, and developing their characters' skills and abilities. Plaintiff earns significant revenues from MapleStory by allowing users to purchase in-game enhancements.

**The MapleStory Client and Server.** Two interrelated components are required to play MapleStory. These are known as the "client" and the "server." First, in order to play MapleStory, users must download and install on their personal computers a software program known as the MapleStory "client." The MapleStory client contains a number of files that comprise those elements of the MapleStory game that can be perceived by the user when the game is being played, such as artwork,

[1/] In addition to untimely filing an Opposition and making a number of material admissions in deposition testimony and in response to Plaintiff's interrogatories, Defendant has not submitted a separate statement of genuine disputes of material fact in opposition to Plaintiff's statement of uncontroverted facts, as required by Local Rule 56-2. If the non-moving party fails to identify the triable issues of fact, the court must treat the moving party's evidence as uncontroverted. See Local Rule 56-3. The Court will do so.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 10-9689 PA (JCx) | Date | December 13, 2011 |
| Title | Nexon America, Inc. v. S.H., et al. | | |

sounds, color palates, and other audiovisual elements. Within the MapleStory client is an "executable" (.exe) file (the "MapleStory EXE") that is used to launch the MapleStory game.

The MapleStory client is made available by Plaintiff on its website and one authorized third-party website, FilePlanet. The MapleStory client is continually updated and refined by Plaintiff, in order to add additional features, fix bugs, and increase security measures. Once an updated client is made available to the public, the earlier client is removed from Plaintiff's website and no longer is made available by Plaintiff to the public. Other than FilePlanet, Plaintiff has not authorized any third-party websites to distribute the MapleStory client. It also does not authorize the reproduction or distribution of any old, superseded MapleStory clients.

**The Nexon Terms of Use.** In order to play MapleStory, users must register for a Nexon "Passport ID." At that time, users are provided with a hyperlink to Nexon.net's Terms of Use (the "ToU") and Privacy Policy. Before receiving a Nexon Passport ID, a user must confirm that he or she has read and assented to the ToU by checking a box at the bottom of the registration web page. The user may decline to enter into this contract by not checking the box, at which point the user will not be able to register for Nexon.net or download the MapleStory client. Additionally, during the process of installing the game, the MapleStory client again displays the ToU. Before playing the game for the first time, the user again must manifest assent to the ToU by clicking on a button labeled "Agree." The user may decline to enter into this contract by clicking a button labeled "Disagree." If the user clicks on the "Disagree" button, the MapleStory client will close.

Pursuant to the ToU, Plaintiff grants to the user, subject to the terms of the ToU, "a non-exclusive, limited, fully revocable, license to use the Service, and the content contained therein in conjunction with the Service." The ToU specifically provides that users may not: (1) "[h]ost, provide matchmaking services, for or emulate or redirect the communications protocols used by [Plaintiff] (or [Plaintiff's] designees) . . . ," (2) "[e]xploit the Software [including MapleStory] . . . for any commercial purpose," or (3) "[u]se tools which hack or alter the Software, Cash Items or the Service or that allow users to connect to the Software's private binary interface or other interfaces other than those provided by [Plaintiff] to [users]."

**Nexon's Access Control Technologies.** In order to prevent members of the public from accessing and playing MapleStory without Plaintiff's authorization, Plaintiff has incorporated into the MapleStory client technical measures that effectively control access to the MapleStory game world. Among these is a system that prevents the MapleStory client from being connected to a server other than Plaintiff's MapleStory server. If the client attempts to connect to a location other than Plaintiff's MapleStory server, the client will terminate and the game cannot be played. Additionally, during its normal course of operation, once connected to Plaintiff's MapleStory server, the MapleStory client repeatedly performs a "check" of the Internet Protocol ("IP") address to which it is connected to confirm that it still is connected to that server. If at any time that "check" fails (i.e., if the MapleStory client

determines that it is connected to a location other than Plaintiff's MapleStory server), the client will immediately terminate.

**Defendant and the RydahMS Server.** Defendant is the creator, developer, owner and operator of the emulated (or "private") MapleStory server known as RydahMS ("RydahMS"). Defendant also is the owner and operator of the website www.rydahms.com (the "RydahMS Website") and is the moderator of the message board "forums" contained in the Rydah Website. Defendant possesses a Nexon account, and he consented to the ToU at the time he created the account. RydahMS is designed to emulate the actual MapleStory game server Plaintiff operates, and in doing so to enable users to engage in large-scale, multiplayer online play of MapleStory without the authorization of Plaintiff, and with a variety of modifications or "enhancements." Defendant advertised and marketed RydahMS throughout the Internet, including on websites listing the "top" MapleStory private servers. Over 100,000 user accounts were registered with RydahMS EXE.

**The RydahMS EXE.** As noted, the MapleStory client contains security measures that prevent the client from connecting to servers other than Plaintiff's official MapleStory server. Accordingly, Defendant created and distributed a special "executable" (.exe) computer software file titled rydahms.exe (the "RydahMS EXE"). The RydahMS EXE is designed to replace the MapleStory EXE in the MapleStory client and thereby enable users to play MapleStory on Defendant's unauthorized server, notwithstanding the security measures and restrictions contained in the MapleStory client. Without the RydahMS EXE, the MapleStory client cannot be connected to the RydahMS server, and any attempts to connect to RydahMS will fail or cause the MapleStory client to terminate. The RydahMS EXE contains nearly all of the code contained in the MapleStory EXE, save for that altered by Defendant to circumvent Plaintiff's security measures.

In order to create the RydahMS EXE, Defendant downloaded a modified version of the MapleStory EXE file and made modifications or edits to that file and to "hex" (numerical) values contained within that file. First, the MapleStory EXE contains commands and instructions that direct the MapleStory client to connect to the IP address of Plaintiff's MapleStory server. Defendant replaced those commands with a different set of commands that direct the MapleStory client to connect instead to the IP address of the RydahMS server.

Second, the MapleStory EXE performs periodic checks to ensure that it is connected to Plaintiff's MapleStory server. To avoid and bypass these checks, the RydahMS EXE contains code that causes the computer to detect falsely during these checks that it is connected to Plaintiff's MapleStory server. This causes the MapleStory client to remain open and playable when it should have terminated.

Defendant created more than 10 versions of the RydahMS EXE. After creating each version, Defendant distributed it by uploading a copy of the software file (as well as the entire MapleStory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9689 PA (JCx) | Date | December 13, 2011 |
|---|---|---|---|
| Title | Nexon America, Inc. v. S.H., et al. | | |

client) to several third-party file sharing or "locker" websites, including the websites MediaFire and SendSpace, and then posting links to the files on his website.

**The RydahMS Website.** Users wishing to play MapleStory on RydahMS were required to first visit Defendant's RydahMS Website and set up an account. Via the RydahMS Website, Defendant provided users with links to unauthorized copies of the MapleStory client software (in its entirety), links to the RydahMS EXE, and instructions on how to integrate the RydahMS EXE with the MapleStory client and connect to RydahMS. After creating an account and downloading the required software, users were able to access all of the features and functions of MapleStory, without authorization from Plaintiff, and without being connected to Plaintiff's MapleStory server.

The RydahMS Website also contained a "forum" or "message board" in which users of RydahMS could connect and chat with each other, assist members of the public in solving technical problems, and recommend changes or upgrades to RydahMS. Defendant, under the username "Charizard," was a frequent contributor to the RydahMS forums, where he corresponded with users of RydahMS, provided technical support and assistance, and encouraged them to make "donations" to the website. Defendant also used the forum to comment on Plaintiff's anti-piracy activities and re-post links to the MapleStory client and the RydahMS EXE after Plaintiff forced Defendant's hosting service to take down the files. During the time it was active, RydahMS had more than 100,000 user accounts. Defendant made at least $115,000 from donations and purchases of game enhancements by RydahMS users.

Plaintiff filed this action on December 19, 2010, against Defendant and co-defendant J.H.[2/] The Complaint brings the following causes of action against Defendant: (1) copyright infringement; (2) inducement to infringe copyright; (3) contributory copyright infringement; (4) vicarious copyright infringement; (5) violation of the Digital Millennium Copyright Act ("DMCA"); (6) breach of contract; (7) intentional interference with contractual relations; and (8) unfair competition. Plaintiff now moves for partial summary judgment on the first, second, third, fifth, sixth and seventh causes of action. Having considered the parties' submissions, and for the reasons that follow, the Court grants in part and denies in part Plaintiff's Motion.

## II. Legal Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of

[2/] On December 12, 2011, a stipulated permanent injunction was entered against J.H. and he was terminated as a party.

demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); see also Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). The moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence, or by any other form of admissible evidence. See Celotex, 477 U.S. at 322. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325.

As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed. R. Civ. P. 56(e)(2) (nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial"). A "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Fazio v. City & County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting Anderson, 477 U.S. at 249, 252). Otherwise, summary judgment shall be entered.

## III. Analysis

### A. Defendant's Opposition

Defendant untimely filed an Opposition to Plaintiff's Motion, and thus the Court need not consider it. Consideration of the Opposition, however, does not help the Defendant. The Opposition, as noted, does not attempt even to place in dispute any material facts, and advances only one legal argument in opposition to entry of summary judgment. Defendant does not dispute any of Plaintiff's liability arguments for any of the causes of action alleged in the Complaint. Instead, Defendant argues only that because he was a minor at the time he created and operated the RydahMS server, and given that the federal statutes "cited by Plaintiff are . . . complicated," he should "be permitted to disaffirm and void the damage provisions of statutes cited by Plaintiff[.]" (Opp'n at 2.) Defendant cites no authority for this proposition, and the Court has found none. Indeed, Defendant, even as a minor, was a sophisticated software programmer who understood that his actions and those of his customers were unlawful.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9689 PA (JCx) | Date | December 13, 2011 |
|---|---|---|---|
| Title | Nexon America, Inc. v. S.H., et al. | | |

Defendant neither has contested any material facts (indeed, his deposition testimony and answers to interrogatories admit most of them) nor advanced any viable legal arguments in opposition to Plaintiff's Motion. With these considerations in mind, the Court will proceed with its analysis.

B. Plaintiff is Entitled to Summary Judgment on its Copyright Infringement Claims

Copyright infringement is proven by showing (1) ownership of the works infringed, and (2) that a defendant violated at least one exclusive right under 17 U.S.C. § 106. A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001). The Copyright Act also recognizes "secondary" liability for those who knowingly encourage, induce, or facilitate copyright infringement. Metro-Goldwyn-Mayer Studios Inc., v. Grokster, Ltd., 545 U.S. 913, 919 (2005).

Based on the established and uncontroverted facts, Plaintiff moves for summary judgment as to liability on its claims that Defendant engaged in direct copyright infringement, inducement to infringe copyright, and contributory copyright infringement. For the reasons that follow, summary judgment is appropriate as to these claims.

1. Direct Infringement

As the owner of copyright in MapleStory, Plaintiff possesses the exclusive rights to reproduce, distribute, and to create derivative works of (i.e., adapt) MapleStory. See 17 U.S.C. §§ 106(1), (2), (3). The uncontroverted facts demonstrate that Defendant violated each of these exclusive rights. Defendant downloaded and installed to his computer unauthorized copies of the MapleStory client, which he obtained from unauthorized third party websites. Such actions violate Plaintiff's exclusive right of reproduction. See Napster, 239 F.3d at 1014 ("Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights."); MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 518-19 (9th Cir. 1993) (holding that loading software onto a computer constitutes making a copy under Copyright Act). Moreover, Defendant modified and altered the MapleStory EXE file contained within the MapleStory client, thus violating Plaintiff's adaptation right. See Apple, Inc. v. Psystar Corp., 673 F. Supp. 2d 931, 938-39 (N.D. Cal. 2009) (holding that modification of software files created a derivative work); Micro Star v. Formgen Inc., 154 F.3d 1107, 1112 (9th Cir. 1998) (holding that defendant infringed plaintiff's adaptation right by creating and distributing video game modifications). Finally, Defendant distributed the infringing RydahMS EXE, uploading the RydahMS EXE to third-party "storage" or "locker" websites. Once uploaded to those websites, the RydahMS EXE was downloaded by (i.e., distributed to) RydahMS users. Defendant thus infringed Plaintiff's exclusive right of distribution of its copyrighted work. Napster, 239 F.3d at 1014 ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights."); Arista Records LLC v. Usenet.com, Inc., 633 F. Supp. 2d 124, 132-33 (S.D.N.Y. 2009) (holding that transmitting copies of digital files constitutes unlawful distribution).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9689 PA (JCx) | Date | December 13, 2011 |
|---|---|---|---|
| Title | Nexon America, Inc. v. S.H., et al. | | |

Accordingly, Defendant's conduct constituted direct copyright infringement, and summary judgment as to liability is appropriate on that claim.

2. Inducement to Infringe Copyright and Contributory Copyright Infringement

Plaintiff next moves for summary judgment on Count 2 (inducement to infringe copyright) and Count 3 (contributory copyright infringement). Plaintiff bases these claims on allegations that Defendant materially contributed to copyright infringement by RydahMS users and induced others to violate its rights. As the Ninth Circuit has explained:

> Contributory copyright infringement is a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent. This court and the United States Supreme Court . . . have announced various formulations of the same basic test for such liability. We have found that a defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) 'induces, causes, or materially contributes to the infringing conduct.' In an Internet context, we have found contributory liability when the defendant 'engages in personal conduct that encourages or assists the infringement.' In Metro-Goldwin-Mayer Studios, Inc. v. Grokster, Ltd., the Supreme Court adopted from patent law the concept of 'inducement' and found that '[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement.' Most recently, . . . we found that 'an actor may be contributorily liable [under Grokster] for intentionally encouraging direct infringement if the actor knowingly takes steps that are substantially certain to result in such direct infringement.'
>
> We understand these several criteria to be noncontradictory variations on the same basic test, i.e., that one contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement.

Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 794-795 (9th Cir. 2007) (citations omitted, alterations in original); see also Arista Records LLC v. Lime Group LLC, 784 F. Supp. 2d 398, 424 (S.D.N.Y. 2011) ("In Grokster, the Supreme Court confirmed that inducement of copyright infringement constitutes a distinct cause of action.").

The undisputed facts compel the grant of summary judgment for Plaintiff on Counts 2 and 3. It is undisputed that Defendant advertised RydahMS EXE on the Internet, instructed potential users how to download, install and use the server and modified client, and offered extensive technical support to his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-9689 PA (JCx) | Date | December 13, 2011 |
|---|---|---|---|
| Title | Nexon America, Inc. v. S.H., et al. | | |

customers. Defendant, of course, was the creator and distributor of an infringing product intended to attract thousands of users from authorized MapleStory servers. Moreover, there is no dispute that Defendant was aware that his conduct and that of his customers constituted copyright infringement. Defendant specifically knew that the links he posted to the MapleStory client were to websites not affiliated with Plaintiff, and that RydahMS users were downloading infringing copies of the MapleStory client using those links. Indeed, Defendant, on his website, frequently discussed Plaintiff and the fact that RyhdahMS was engaged in copyright infringement and otherwise unlawful activity. For example, in June 2009 Defendant moved his forum and website to the Netherlands, explaining that this decision had been made "so that we can run from n3x0n more" and "avoid U.S. law."

These facts – evincing an intent to foster infringement by others and actions taken to contribute directly to such infringement – constitute both "material contribution" and "inducement" to infringe Plaintiff's copyright. See, e.g., Grokster, 545 U.S. at 916 (noting that inducement may be found where defendant disseminates a message 'designed to stimulate others' to commit infringement," and where a defendant relies on infringing activity for the success of her business); Arista, 784 F. Supp. 2d at 426 (granting summary judgment on inducement claim where defendant's program allowed others to share unauthorized copies of copyrighted works, where defendant used online discussion forums to discuss the infringing nature of its customers' activities, and where defendant engaged in online advertising to attract infringing users); Napster, 239 F.3d at 1021-22 (finding Napster contributorily liable because it knew of the availability of infringing music files on its system, assisted users in accessing such files, and failed to block access to such files); Ellison v. Robertson, 357 F.3d 1072, 1078 (9th Cir. 2004) (finding material contribution where defendant was "storing infringing copies of Ellison's works on its USENET groups and providing the groups' users with access to those copies"). Again, Defendant's Opposition disputes none of these facts or legal conclusions. Summary judgment for Plaintiff is thus appropriate as to liability on its claims of inducement to infringe copyright (Count 2) and contributory copyright infringement (Count 3).

C. Defendant's Actions Violated Section 1201(a)(2) of the DMCA

Plaintiff next moves for summary judgment as to liability and statutory damages on its claim that Defendant violated § 1201(a)(2) of the DMCA. Based on the undisputed facts, the Court will grant Plaintiff's Motion as to liability, and deny it as to the amount of statutory damages.

1. Liability under Section 1201(a)(2)

Section 1201(a)(1) of the DMCA prohibits, in relevant part, the circumvention of, "a technological measure that effectively controls access to a work protected [by copyright.]" 17 U.S.C. § 1201(a)(1). Section 1201(a)(2) of the DMCA prohibits:

> offer[ing] to the public, provid[ing], or otherwise traffic[king] in any technology, product, service, device, component, or part thereof, that—
>
> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected [by copyright];
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected [by copyright]; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected [by copyright].

17 U.S.C. § 1201(a)(2).

As a result of his admitted modification of the MapleStory EXE (to create the Rydah EXE), and his subsequent distribution of the RydahMS EXE, Defendant is liable under this provision. The primary – indeed, the only – purpose of the RydahMS EXE is to circumvent the authentication mechanisms of the MapleStory EXE that would normally function to prohibit the playing of MapleStory on an unauthorized server. MapleStory EXE's authentication mechanism ensures that players use Plaintiff's server only, and thus "effectively controls access to a work protected [by copyright]." Id. Defendant advertised the RydahMS EXE to potential users, many of whom downloaded the software. Thus, Defendant's conduct violated § 1201(a)(2). See, e.g., MDY Indus., LLC v. Blizzard Entm't, Inc., 629 F.3d 928, 954 (9th Cir. Ariz. 2010) (affirming grant of permanent injunction under § 1201(a)(2) where defendant created a software program to circumvent online computer game's anti-cheat program, which in normal operation would scan the player's computer RAM and confirm the absence of any "bots" or cheats); Dish Network, L.L.C. v. SatFTA, 52 Comm. Reg. (P & F) 837 (N.D. Cal. 2011) (granting summary judgment where defendant admitted to modifying software files in order to "circumvent DISH Network's conditional access system"). Accordingly, summary judgment as to liability is appropriate on Plaintiff's DMCA claim.

2. Damages

Plaintiff seeks statutory damages in the amount of $200 per violation of § 1201 of the DMCA. The DMCA provides that "a complaining party may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 10-9689 PA (JCx) | Date | December 13, 2011 |
| Title | Nexon America, Inc. v. S.H., et al. | | |

circumvention, device, product, component, offer, or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3)(A).

There is precedent suggesting that violations of the DMCA should be construed on a per-download basis. See SatFTA, 52 Comm. Reg. (P & F) 837 (awarding on summary judgment statutory damages in amount of $200 per download); DISH Network v. Ward, 2010 U.S. Dist. LEXIS 142090 (M.D. Fla. Jan. 8, 2010); Stockwire Research Group, Inc. v. Lebed, 577 F. Supp. 2d 1262, 1268 (S.D. Fla. 2008). Courts also have reasoned that the DMCA damages provisions should be interpreted to allow statutory damages for each unlawful distribution or posting made by a defendant. See Stockwire, 577 F. Supp. 2d at 1267; McClatchey v. Associated Press, 2007 U.S. Dist. LEXIS 41969, at *6 (W.D. Pa. June 8, 2007).

The uncontroverted evidence establishes that RydahMS had over 100,000 user accounts. Based on this evidence, Plaintiff seeks a statutory damage award of $20,000,000. This figure is based on Plaintiff's assumption – unsupported by the record – that each user account corresponds to a unique individual and a unique download of the RydahMS EXE. (See Separate Statement of Uncontroverted Facts ¶ 43 ("The RydahMS EXE files . . . were downloaded in excess of 100,000 times (i.e. by every person who has logged on to or used the RydahMS EXE server); ¶ 45 ("During the time it was active, RydahMS EXE had more than 100,000 [user] accounts.").) Crucially, however, Defendant never admits, and the evidence does not establish, that each user account corresponds to a unique download of the RydahMS EXE. Indeed, a single user might have multiple user accounts, but only need to download and install the RydahMS EXE once.[3/] (It is also possible, of course, that a user with a single user account might download the RydahMS EXE multiple times.) Indeed, Defendant was careful to clarify at his deposition that RydahMS had over 100,000 "accounts," *not* "users." (Motion for Summary Judgment, Ex. 7 (Hein Depo.) at 74:3-6.)

In response to Plaintiff's interrogatory, Defendant states that "[o]ver 100,000 people have logged onto, used, or participated in RydahMS." (Motion for Summary Judgment, Ex. 2 (Responses to Interrogatories), No. 4.) In light of Defendant's deposition testimony and the ambiguity of the term "persons" in this context, however, the Court is unprepared to make a factual finding that the RydahMS EXE was downloaded at least 100,000 times. Thus, because Plaintiff's evidence fails to establish with sufficient accuracy the number of downloads of the RydahMS EXE, Plaintiff's partial motion for summary judgment as to statutory damages for Defendant's DMCA violations is denied.

C. Breach of Contract

[3/] For example, Defendant registered 10 separate MapleStory user accounts.

To establish breach of contract, a plaintiff must show the existence of a contract between the parties, that the plaintiff performed his contractual duties or was excused from performing them, that the defendant failed to perform his contractual duties, and that the breach caused the plaintiff damages. EPIS, Inc. v. Fidelity & Guaranty Life Ins. Co., 156 F. Supp. 2d 1116, 1124 (N.D. Cal. 2001) (citing Reichert v. General Ins. Co. of America, 68 Cal. 2d 822, 830, 69 Cal. Rptr. 321, 442 P.2d 377 (1968)).

"Terms of use" for online services are enforceable contracts under California law. See Adobe Sys., Inc. v. One Stop Micro, Inc., 84 F. Supp. 2d 1086, 1089-93 (N.D. Cal. 2000) (end user license agreement valid under California law); Hotmail Corp. v. Van Money Pie, Inc., 1998 U.S. Dist. LEXIS, at *6 (N.D. Cal. 1998) (grinting preliminary injunction in part because plaintiff was likely to prevail on claim for breach of "clickwrap"[4/] agreement). The Eighth Circuit, interpreting California law, has affirmed the enforceability of a terms of use agreement for a computer game that is nearly identical to Plaintiff's ToU. Davidson & Assocs., Inc. v. Internet Gateway, 334 F. Supp. 2d 1164, 1170-71, 1177-78 (E.D. Mo. 2004), aff'd, 422 F.3d 630 (8th Cir. 2005).

Defendant registered an account with Plaintiff (in fact, he registered 10 accounts), and consented to the ToU. The ToU prohibited Defendant from "[h]ost[ing], providing] matchmaking services for or emulat[ing] or redirect[ing] the communications protocols used by [Plaintiff] . . . ." It also prohibited Defendant from exploiting MapleStory for "any commercial purpose," and from "[m]odify[ing] the Software . . . ." The uncontroverted facts establish that Defendant engaged in precisely these activities. Defendant does not dispute that the ToU is binding and enforceable, or that his actions constituted a breach of that agreement. Thus, summary judgment is warranted on the breach of contract claim. See Davidson, 334 F. Supp. 2d at 1177-82.

D. Intentional Interference with Contractual Relations

To prevail on its intentional interference with contract claim, Plaintiff must show (1) the existence of a valid contract between Plaintiff and a third party, (2) Defendant's knowledge of the contract, (3) intentional acts designed to induce a breach or to disrupt a contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) resulting damage. See Reeves v. Hanlon, 33 Cal. 4th 1140, 17 Cal. Rptr. 3d 289, 95 P.3d 513, 517 (Cal. 2004) (citing Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 270 Cal. Rptr. 1, 791 P.2d 587, 590 (Cal. 1990)).

---

[4/] "Clickwrap" or "clickthrough" agreements, are those where an online user encounters the agreements' terms on a given website, and must select "I agree" or "Yes" before the person can continue to access the protected sections of the site or download the software program. See, e.g., Oracle Corp. v. SAP AG, 2008 U.S. Dist. LEXIS 103300, at *17-19 (N.D. Cal. Dec. 15, 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 10-9689 PA (JCx) | Date | December 13, 2011 |
| Title | Nexon America, Inc. v. S.H., et al. | | |

Summary judgment on this claim is inappropriate. First, although RydahMS users downloaded modified versions of the MapleStory client from unauthorized websites, Plaintiff's evidence does not establish that in downloading these unauthorized versions, RydahMS users were assenting to Plaintiff's ToU or that they had existing contracts with Plaintiff. Similarly, Plaintiff has not established that Plaintiff knew of and thus intended to interfere with any of the alleged contracts. Finally, Plaintiff's claimed harm – that it lost profits as RydahMS players directed funds (well over $100,000) to Defendant that they otherwise would have spent with Plaintiff – is entirely speculative. Particularly in light of its lack of clear proof of the existence of contracts between Plaintiff and RydahMS users, Plaintiff's evidence does not establish that RydahMS users would have spent those funds with *Plaintiff*. Thus, genuine issues of fact exist that preclude the entry of summary judgment on this claim.

Conclusion

For all of the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is granted in part and denied in part. Specifically, the Court grants summary judgment as to liability on Plaintiff's claims for direct copyright infringement, inducement to infringe copyright, contributory copyright infringement, violation of the DMCA, and breach of contract. The Court denies Plaintiff's Motion as to the amount of statutory damages under the DMCA as well as the claim for intentional interference of contractual relations.

IT IS SO ORDERED.

_____ : _____

Initials of Preparer _____